Valiere LAUSUSE, individually and as next friend for Ashley S. Laususe, Plaintiff/Respondent,

Kelli Richie, By and Through her next friend, Denice Richie, Plaintiff/Appellant,

v.

NORMANDY OSTEOPATHIC HOSPITAL, a/k/a Metropolitan Medical Center, Defendant.

No. 68549.

Missouri Court of Appeals, Eastern District, Division Four.

April 2, 1996.

Michael D. Stokes, Devereaux, Stokes & Nolan, P.C., St. Louis, Christine A. Gilsinan, St. Louis, for Appellant.

Mark J. Bremer, Lori Baskins, Kohn, Shands, Elbert, Gianoulakis & Giljum, St. Louis, for Respondent.

SIMON, Judge.

Appellant, Kelli Richie, by and through her next friend, Denice Richie, appeals the granting of summary judgment in favor of respondents, Valiere Laususe, individually, and as next friend for Ashley Laususe, in an action for wrongful death, § 537.080 RSMo.1991 (all further references shall be to RSMo 1991 unless otherwise noted.)

Appellant contends that the trial court erred in granting summary judgment in favor of respondents because: 1) as an alleged

illegitimate child of the deceased, Michael Laususe, appellant is entitled to participate in the wrongful death suit involving her alleged father; and 2) res judicata and/or collateral estoppel do not bar appellant's second paternity action, and therefore, does not bar her participation in the wrongful death action. We reverse and remand.

When considering appeals from summary judgments, we review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance v. Mid–America Marine*, 854 S.W.2d 371, 376[1–3] (Mo. banc 1993). However, summary judgment is proper where the movant demonstrates that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Id.* at 380–381.

The record indicates that the underlying lawsuit is a wrongful death action involving the death of Michael Laususe (Michael), who died on March 3, 1988. Respondents filed the wrongful death action in the Circuit Court of St. Louis County on February 7, 1991. Respondents reached a settlement with the defendant, Normandy Osteopathic Hospital, a/k/a Metropolitan Medical Center, for $450,000.00 in June of 1993. Thereafter, appellant filed an entry of appearance in the wrongful death action on August 17, 1993, claiming to be Michael's illegitimate minor daughter and an entitlement to a portion of the settlement proceeds. On or about the same time, appellant filed a paternity action styled *Richie by and through Richie v. Laususe (Richie I )*, to establish the parent-child relationship between herself and Michael, pursuant to the Uniform Parentage Act (UPA), § 210.817 *et seq.*, and named Michael as the sole defendant. The trial court dismissed the paternity action. On appeal, this Court dismissed the appeal for lack of personal jurisdiction, holding that the trial court did not have jurisdiction over Michael, a dead person, as the sole defendant in the paternity action. *Richie I*, 892 S.W.2d 746, 748[2] (Mo.App.1994).

In the wrongful death action, respondents filed a petition for approval of the wrongful death settlement on September 1, 1993, which the trial court approved on September 17, 1993. Thereafter, respondents filed a motion to dismiss and for summary judgment against appellant in the wrongful death action. The motion contended that appellant should be barred from participating in the wrongful death action because: 1) at no time did appellant obtain an adjudication that she is the daughter of Michael; 2) neither appellant nor anyone on her behalf ever applied for letters of probate administration with respect to Michael's death, nor did they ever seek the appointment of a personal representative for Michael; and 3) *Richie I* acts as res judicata and/or collateral estoppel and prevents appellant from re-litigating the paternity issue. In support of their motion, respondents made specific references to: a) appellant's first amended petition for paternity in *Richie I*; b) appellant's affidavit; c) the trial court's order approving the wrongful death settlement; d) the trial court's order dismissing the petition in *Richie I*; and e) the decision of this Court in *Richie I*.

On or about March 29, 1995, appellant filed a second paternity action in the St. Louis County Circuit Court styled *Kelli Richie, by and through her next friend Corrine Laususe v. Michael Laususe and Denice Brown*, Cause No. 674202 (*Richie II* ). Denice Brown is the natural mother of Kelli Richie. Corrine Laususe is Kelli Richie's parental grandmother. Thereafter, appellant filed a response essentially denying the substantive allegations of respondents' motion for summary judgment. Further responding, appellant made specific references to the decision of this Court in *Richie I*, her first amended petition in *Richie I*, and her petition for paternity in *Richie II*. Respondents' motion was granted.

We note that respondents initially filed a motion to dismiss and for summary judgment. However, when matters outside the pleadings are presented to and not excluded by the trial court, a motion to dismiss shall be treated as one for summary judgment. Rule 55.27(a). Here, respondents supplemented the pleadings by filing affidavits and exhibits in support of their motion which were not excluded by the trial court. Therefore, respondents' motion to dismiss is converted into a motion for summary judgment,

and the trial court properly designated it as such. Rule 55.27(a); *Schwartz v. Lawson,* 797 S.W.2d 828, 833 (Mo.App.1990).

In her first point on appeal, appellant contends that the trial court erred in granting respondents' motion for summary judgment because as an alleged illegitimate child of Michael, appellant is entitled to participate in the wrongful death lawsuit involving her alleged father. Respondents contend that the trial court did not err because appellant cannot take part in the wrongful death action absent an adjudication of paternity.

■ As to who may bring a wrongful death action § 537.080 provides in pertinent part:

**537.080. Action for wrongful death—who may sue—limitation**

1. Whenever the death of a person results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person or party who, or the corporation which, would have been liable if death had not ensued, shall be liable in an action for damages, notwithstanding the death of the person injured, which damages may be sued for:

(1) By the spouse or children or the surviving lineal descendants of any deceased children, natural or adoptive, legitimate or **illegitimate**.... (emphasis added)

Furthermore, a proposed wrongful death settlement should be held in abeyance until any issue as to the paternity of an alleged illegitimate child wrongful death claimant is determined in accordance with the UPA. *Snead by Snead v. Cordes by Golding,* 811 S.W.2d 391, 396[10, 11] (Mo.App.1991).

Here, the record reveals that respondents reached a proposed settlement with the defendant in the wrongful death action in June of 1993. Thereafter, on March 29, 1995, appellant filed a paternity action which is pending in the Circuit Court of St. Louis County, *Richie II.* Therefore, the proposed settlement should be held in abeyance until the pending paternity proceeding is resolved. *See Snead by Snead, supra.*

In her second point on appeal, appellant contends that the trial court erred in granting respondents' motion for summary judgment because the decision of the Court of Appeals in *Richie I* does not operate as res judicata and/or collateral estoppel with respect to her current pending paternity action in *Richie II.* Respondents essentially contend that the decision in *Richie I* does bar the current paternity action, therefore, appellant has no valid pending paternity action which would act to stay the proceedings in the wrongful death action.

■ We consider the following in determining whether res judicata applies: 1) identity of the thing sued for; 2) identity of the cause of action; 3) identity of the persons and parties to the action; and 4) identity of the quality of the person for or against whom the claim is made. *Gardner v. City of Cape Girardeau,* 880 S.W.2d 652, 655[6, 7] (Mo. App.1994). Furthermore, before res judicata bars a claim, the previous determination must have been on the merits of the claim. *S.M.B. by W.K.B. v. A.T.W.,* 810 S.W.2d 601, 605 (Mo.App.1991). A judgment on the merits is one rendered after argument and investigation and when it is determined which party is in the right, as distinguished from a judgment rendered upon some preliminary or technical point, or by default, and without trial. *Bi-State Dev. Agency v. Whelan Sec.,* 679 S.W.2d 332, 336[5] (Mo.App.1984).

■ Here, *Richie I* was a paternity action which was dismissed for lack of personal jurisdiction over Michael, a dead person. *Richie I* at 748[2]. The issue of whether or not Michael is appellant's father was never determined. Therefore, a judgment on the merits has never been entered regarding Michael's alleged paternity. As a result, res judicata does not apply. *See S.M.B., supra.*

■ We consider the following in determining whether collateral estoppel applies: 1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; 2) whether the prior adjudication resulted in a judgment on the merits; 3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior

adjudication; and 4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue. *Gardner*, 880 S.W.2d at 655[4].

■ As previously stated, *Richie I* was a paternity action which was dismissed for lack of personal jurisdiction over Michael, a dead person, and a judgment on the merits has never been entered regarding Michael's alleged paternity. As a result, collateral estoppel does not apply. *See Gardner, supra.*

■ Respondents' motion for summary judgment further alleged that they were entitled to judgment as a matter of law because neither appellant, nor anyone on her behalf, ever applied for letters of probate administration with respect to Michael's death, nor did they ever seek the appointment of a personal representative for Michael. Therefore, respondents contend that appellant's wrongful death claim is barred by the three-year statute of limitations contained in § 473.360 of Missouri's Probate Code which provides that claims against a decedent are barred if administration of the estate is not commenced within three years after the death of the decedent. Therefore, since appellant did not petition to open an estate for Michael within three years after his death, appellant's wrongful death claim filed more than five years after his death is barred.

Here, however, the wrongful death action is not an action against the deceased, but rather is an action against the defendant, Normandy Osteopathic Hospital, a/k/a Metropolitan Medical Center. As a result, appellant's claim in the wrongful death action is not governed by § 473.360.

■ It is important to note that respondents' brief raises additional grounds to affirm the decision of the trial court which were not included in their motion for summary judgment. Because our review is *de novo*, we address these additional arguments. *ITT*, 854 S.W.2d at 387, 388[37, 38].

■ Respondents further contend that their motion for summary judgment should be granted because appellant's pending paternity action, *Richie II*, is barred by the statute of limitations set forth in § 507.100.1(3), which prohibits suits against a deceased party if no proper motion for substitution is filed within nine months after the first published notice of letters testamentary or of administration. However, *Richie II* is still pending in the Circuit Court, and is not before this Court on appeal. *See A.E. Bell v. M.A. Kabir Psychiatry, Inc.*, 828 S.W.2d 956, 957[2] (Mo.App.1992). In any event, § 507.100.1(3) does not apply because the record indicates Michael died before the petition in *Richie I* and *Richie II* was filed. Point denied.

■ Respondents also contend that appellant's wrongful death claim is barred by the three-year statute of limitations contained in § 537.100. Specifically, respondents allege that the three-year statute of limitations is not tolled with respect to appellant's wrongful death claim since appellant has never been adjudicated Michael's illegitimate child. Therefore, appellant's wrongful death claim filed on August 17, 1991, more than three years after Michael's death, is barred.

However, in *Snead by Snead v. Zephyr Transport, Inc.*, 819 S.W.2d 776 (Mo.App. 1991), the court held that the filing of the application for approval of a wrongful death settlement by the decedent's mother and legitimate child did constitute a commencement of the action under § 537.100, and thus tolled the statute of limitations with regard to a claim made by the decedent's alleged illegitimate children. *Id.* at 778[1]. Furthermore, the court held that if the alleged illegitimate children were found to be the children of the decedent, they would be added as co-plaintiffs in the wrongful death action. *Id.*

Here, respondents filed their wrongful death action on February 7, 1991, and filed a petition for approval of the wrongful death settlement on September 1, 1993. Therefore, the statute of limitations was tolled as to any wrongful death claim made by Michael's al-

leged illegitimate children, i.e., appellant. *See Snead, supra.* Furthermore, if appellant is found to be Michael's illegitimate child, she would be added as a party in the wrongful death action. *See Id.* As a result, the trial court erred in granting respondents' motion for summary judgment.

The judgment of the trial court is reversed and the case is remanded.

AHRENS, P.J., and PUDLOWSKI, J., concur.